UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL SCOTT PIETILA,

        Plaintiff,

v.                                Case No. 17-cv-1586-PP

CAPTAIN TRITT, and
JOHN AND JANE DOES,

        Defendants.

**DECISION AND ORDER SCREENING THE PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 13) AND DENYING THE PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 5 AND 10)**

Plaintiff Michael Scott Pietila, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. §1983, regarding his conditions-of-confinement at the Waupun Correctional Institution ("WCI"). Dkt No. 1. He also has filed two motions asking the court to appoint counsel to represent him. Dkt. Nos. 5, 10. The plaintiff has consented to Judge Duffin's authority to resolve the case, but because the defendants have not yet been served, they have not had the opportunity to consent. For that reason, the case is before this court for the limited purpose of screening the amended complaint and resolving the pending motions for appointment of counsel.

1

I. Screening the Amended Complaint

   A. *Standard for Screening Complaints*

The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   *Facts Alleged in the Amended Complaint*

Magistrate Judge William Duffin screened the plaintiff's original complaint on February 7, 2018, and instructed the plaintiff to file an amended complaint. Dkt. No. 12. Judge Duffin identified two main problems with the original complaint: (1) the plaintiff had named nineteen different individuals as defendants, but had not described what these individuals did or did not do to violate his constitutional rights, and (2) it appeared that the plaintiff may have been attempting to assert unrelated claims against different defendants in the same lawsuit. Id. at 5-6.

The court received the plaintiff's amended complaint on February 22, 2018; it named Captain Tritt and "John and Jane Does" as defendants. Dkt. No. 13. Although the plaintiff did not re-plead all of the relevant factual allegations from the original complaint, he explains that Tritt was the "supervisor" during the one-month period that the plaintiff was in the

Restrictive Housing Unit ("RHU"). Id. at 1. Tritt made "periodic rounds" on RHU, and the plaintiff says that Tritt was the person who initially gave the order to put the plaintiff in "control status." Id.

The plaintiff indicates that he was temporarily insane, suffering from paranoid delusions and living in an "alternate reality." Id. at 2. He says that he suffers from numerous mental health diagnoses that make it hard for him to function from day to day. Id. The plaintiff alleges that while he was in the RHU, he was not given linens, clothes or things to keep him warm, despite the fact that it was winter/early spring and very cold. Id. Nor was he given things to wash with, or hygiene items. Id. He says he had no mattress to sleep on, and was not given toilet paper "until after about a month." Id. He says that on several occasions, he had to eat food after wiping his backside with his bare hands. Id.

The plaintiff replaced the nineteen specific defendants he had named in his original complaint with "John and Jane Does." Id. He states "during this time period so many WCI employees were deliberately indifferent." Id. He says he continually sought relief and help, making numerous requests for the items he had not been given. Id. at 2-3. He says that "[a]ll knew about it, facilitated it, condoned it, approved it, or turned a blind eye." Id. at 3. The plaintiff provides no other information about who the "John and Jane Does" are or what they did or did not do to violate his constitutional rights. With regard to Tritt, the plaintiff says that it is "almost impossible that [Tritt] did not facilitate or

condone this treatment," because he is "the only could who could have, and all the employees [the plaintiff] talked to said 'speak with Tritt.'" Id.

The plaintiff seeks monetary damages and injunctive relief.

C.  *Legal Analysis*

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)).

"The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon jail officials the duty to 'provide humane conditions of confinement' for prisoners." Henderson v. Sheahan, 196 F.3d 839, 844 (7th Cir. 1999) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). This means that prison officials have an obligation to "ensure that inmates receive adequate food, clothing, shelter, protection, and medical care." Id. (quoting Oliver v. Deen, 77 F.3d 156, 159 (7th Cir. 1996); Farmer, 511 U.S. at 832). A prison official's "deliberate indifference" to inhumane conditions of confinement constitutes an Eighth Amendment violation. Id. (quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976)). The constitutional deprivations must be sufficiently serious to "result in the denial of the minimal civilized measure of life's necessities." Id. (citing Farmer, 511 at 834). The prison official must know of

the risk to the plaintiff, but fail to take reasonable measure to protect him. Id. (citations omitted).

The plaintiff has alleged that Tritt knew that he was being deprived of necessities such as hygiene items, warm clothes, and toilet paper, but did nothing about it. The court finds that, at this early stage, the plaintiff has alleged sufficient facts to allow him to proceed on an Eighth Amendment conditions-of-confinement claim against Tritt regarding the one-month period the plaintiff was in RHU. His allegations are sufficient to state an Eighth Amendment claim that Tritt denied the plaintiff "the minimal civilized measure of life's necessities." See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The plaintiff implies that Tritt placed him in RHU in retaliation for the fact that the plaintiff had spit on Officers Detert and Pohl. To state a First Amendment retaliation claim, the plaintiff must show that he engaged in activity protected by the First Amendment, that the defendant subjected him to a deprivation that would likely deter First Amendment activity in the future, and that the plaintiff's First Amendment activity was a motivating factor in the defendant's decision to take retaliatory action. Novoselsky v. Brown, 822 F.3d 342, 354 (7th Cir. 2016) (quoting Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012)).

The court will not allow the plaintiff to proceed on a First Amendment retaliation claim against Tritt. The plaintiff has not alleged that spitting on corrections officers is an activity protected by the First Amendment.

Finally, the court will not allow the plaintiff to proceed against John and Jane Does. As Judge Duffin explained in the original screening order, the plaintiff must identify basic facts about what each John or Jane Doe did or did not do to violate his constitutional rights. The plaintiff cannot simply ask to proceed against anyone and everyone who worked in RHU during a one-month period. He must make specific allegations, such as, "On such and such a date, a female corrections officer refused my request for a mattress." He could then use the discovery process to obtain the name of that female corrections officer. But the plaintiff simply states that there were a lot of people who saw the way he was treated, and did nothing about it. Even under a liberal pleading standard, the plaintiff fails to state claims for relief against John and Jane Does. The court will dismiss John and Jane Does as defendants.

II.     Motions for Appointment of Counsel

The plaintiff filed two motions asking the court to appoint a lawyer to represent him. Dkt. Nos. 5, 10. In the first motion, he explains that he has cognitive and psychological disorders, as well as physical health problems. He says he has no legal training, and cannot afford a lawyer to represent him. He also indicates that he has written to three legal organizations, seeking legal representation. Dkt. No. 5. In the second motion, the plaintiff asserts that he has four cases pending before this court, and that he is overwhelmed with trying to manage all of them. Dkt. No. 10. He says he does not know how much more pressure he can take. In this motion, he lists twelve lawyers whom he has contacted. Id.

In a civil case, the court has discretion to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013). The litigant must first make reasonable efforts to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In this district, a plaintiff can satisfy this requirement by providing the court with: (1) the attorneys' names, (2) the addresses, (3) the date and way the plaintiff attempted to contact them, and (4) the attorneys' responses.

Once the plaintiff makes reasonable attempts to hire counsel, the court then decides "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The court is satisfied that the plaintiff made reasonable attempts to secure counsel on his own. See Dkt. No. 10 at 1-2. However, it will not appoint counsel at this time. The plaintiff's complaint describes what happened to him and why he believes it violated his constitutional rights, and the court is able to understand the facts. Although the plaintiff is not legally trained and has been

8

diagnosed with mental illness, his writing is coherent and the court understands what the plaintiff is attempting to express in his filings.

The plaintiff also explains that he is "severely overwhelmed with trying to figure out how to go forward with these 4 cases." Dkt. No. 10 at 1. All four of the plaintiff's cases, however, are in their early stages. In this case, as in others, there is nothing for the plaintiff to do at this point but wait for the defendants to file an answer. If and when the defendants file an answer, Judge Duffin will issue a scheduling order with further institutions on how to conduct discovery and file dispositive motions. Right now, the court has no evidence before it to conclude that the plaintiff cannot coherently present his case. Therefore, the court will deny his motions to appoint counsel without prejudice. That means that, if things get too complicated for the plaintiff to handle later on, he may renew his request.

## IV. CONCLUSION

The court **ORDERS** that John and Jane Does are **DISMISSED** as defendants.

The court **ORDERS** that the plaintiff may proceed on an Eighth Amendment conditions-of-confinement claim against defendant Tritt.

The court **ORDERS** that the plaintiff's motion to appoint counsel is **DENIED WITHOUT PREJUDICE**. Dkt. No. 5.

The court **ORDERS** that the plaintiff's second motion to appoint counsel is **DENIED WITHOUT PREJUDICE**. Dkt. No. 10.

The court **ORDERS** that under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Tritt. Tritt shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties may not begin discovery until after Judge Duffin enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that this case is **RETURNED** to Magistrate Judge Duffin for further proceedings.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court further advises the plaintiff that if he does not file documents or take other court-ordered actions by the deadlines the court sets, the court

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

could dismiss his case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 7th day of March, 2018.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**